May it please the Court, Your Honors, Lauren Coppola on behalf of Wide Voice, LLC. May it please the Court. The Commission's order declaring Wide Voice's 2017 tariff as void of initio is arbitrary and capricious and must be overturned for two primary reasons. First, the order violates the law by retroactively setting a tariff rate. It violates Section 20483 of the Telecommunications Act, Congress's intent in enacting that statute, and the Commission's own orders implementing and interpreting that statute. Wide Voice's tariff was a 15-day deemed lawful tariff. The law is clear that the Commission does not retroactively order a change of rate in a deemed lawful tariff. Secondly, the Commission's application of the benchmarking rule here is discriminatory and anti-competitive. The order allows incumbent local exchange carriers to charge for calls that competitive local exchange carriers do not. The implications of that rule is, in fact, the exact opposite of the benchmarking rule. When the benchmarking rule is correctly applied, it levels the playing field between incumbents and competitive carriers. When misapplied, as it was here, it's choosing winners and losers, resulting in an anti-competitive market and discrimination amongst carriers. I will address the statutory violation of the order first. You said there were three reasons. What's the third one? I'm sorry, Judge. I thought I had said two. I apologize if I said three different reasons. On the first reason, you said that the FCC impermissibly set a retroactive tariff or retroactively set a tariff. Could the FCC prospectively set the tariff? It could. So here we have a deemed lawful tariff. Under those circumstances, the commission could, through various mechanisms, for instance, a formal complaint under Section 208 of the Telecom Act, find that a rate in a deemed lawful tariff is unreasonable. So in this case, it was a complaint, correct? Correct. So you would not object if the FCC said prospectively the rate would be subject to the benchmarking rule? Well, under my second argument, I would, Your Honor. Under the second argument, you said the application of the benchmarking rule was discriminatory and anti-competitive. My question is, is it illegal? Is the rate illegal? So the rate is not illegal. So why would it be arbitrary for the FCC to apply the benchmarking rule if it's not illegal? I'm sorry. So the rate, Wye Voice's rate in its order, was not illegal. It applied with the benchmarking rule. The question I'm asking is, your second point was that the FCC's application of the benchmarking rule was discriminatory and anti-competitive. So my question to you is, was that application illegal? Was it not in compliance with the law? Yes, that is correct. It was not in compliance with the law? It was not in compliance with the law. Why not? Because the benchmarking rule, as applied in the Order on Appeal, permits incumbent carriers to charge for calls that competitive carriers cannot. Now, the benchmarking rule provides this claim. It provides that a competitive carrier has to charge reasonably the same or lower rate for the same service that an incumbent carrier does. It levels the playing field. What the Wye Voice Order on Appeal here does is say that Wye Voice, a competitive carrier, cannot charge for calls that it transmits to, say, its affiliate competitive carrier or its affiliate voice provider. Isn't this question all about what the meaning of service is under the benchmark rule? And it seems like FCC said that service means tandem switch operation to end office that is not owned by the previous operator. So why shouldn't we accept that as a reasonable interpretation of service? Your Honor, I believe I disagree that it was all about service, but rather whether or not the rate that was being charged for that service was in compliance with the benchmarking rule. Did Wye Voice's rate mirror the incumbent rate for the same service? And there's no dispute here that the like-kind service was provided. So then it does come back to what the service is, because the same service has to have the same fee. So it does come back to whether or not the service that's provided by Wye Voice is the same service that's being provided by the incumbent. That I agree with, Your Honor. It is whether the Wye Voice is providing the same service at the same rate as the incumbent. So it does come down to what is the service being provided by the incumbent and what is the service being provided by Wye Voice as a competitive carrier. Correct. And here, when Wye Voice is providing the same service, that tandem switching service, as the incumbent, it is not permitted to charge the same rate as the incumbent. And that's the flaw in the Wye Voice order. Didn't the FCC make a distinction between a tandem service provider that is delivering service to an affiliated end user as opposed to one that's providing service to an unaffiliated end user? It did in the Wye Voice. It did in the Level 3 order. So in the Level 3 order, which is cited in our briefs, the Commission looked at the incumbents' rates and whether or not they properly were reduced under the step-down regulations. And in that case, the Commission held that an incumbent tandem, when sending a call to its own incumbent end office or its affiliated incumbent end office, had to reduce its rate. However, the Level 3 order found that where that incumbent was sending a call to an affiliated competitive end office, it could charge full rate. It could charge full rate for a competitive wireless end office. Right, but isn't that what, so how is that different from what the FCC did in this case? Because in this case, as applied, when Wye Voice, as the tandem provider, is sending a call to its affiliate competitive local carrier or an affiliate VoIP provider, it has to charge zero under the Wye Voice order. It is in fact different than the AT&T Level 3 order. So you find a circumstance where the incumbent can charge for a call, and here, Wye Voice, as the competitor, sending a call to the exact same end office as the incumbent, cannot charge for that call. So it's the opposite, the inverse of the benchmark. Well, but I thought the distinction that you made was that the end office had to be a price cap carrier. And did Order 3 address that? It did, and my price cap carriers are incumbent carriers. Incumbent is a more recognizable term than price cap carriers, but I'm using them interchangeably. So when the Level 3 order provides that when a price cap carrier incumbent sends a call to a price cap carrier end office, it has to step down. Right, but a competitive is never going to be a price cap carrier, correct? Because by definition, it's not an incumbent carrier. That's correct, Your Honor. And so those step-down rules apply to Wye Voice through the benchmarking rules. And here, I can even make it simpler for the court. Wye Voice's tariff copied nearly word-for-word the incumbent tariff. So back in 2017, when Wye Voice was required to file its tariff, the regulations were in place where all tandem providers needed to file revised tariffs with these reduced step-down rates. Incumbents filed their new tariffs in mid-2017. Two weeks later, all the competitive tandem providers, Wye Voice and all of similarly situated competitive carriers did. And we have examples of those in our filing. So everyone copied the incumbent's carriers' tariffs and filed their competitive tariffs. That benchmark or mirrored those rates. Now, we have two and a half years later, the commission saying that Wye Voice as a competitor did it wrong, didn't properly mirror the ILEC rates when the tariffs are in fact nearly identical. Didn't the incumbents have to engage in the step-down over that period of time? They did. But you're saying that Wye Voice does not have to engage in the step-down? No, Your Honor. What I'm saying is the incumbents have to step down. And Wye Voice as a competitive carrier also needs to step down through the benchmarking rule. So it has to mirror those ILEC rates. It has to charge the same rate for the same service. And it did that plainly by, number one, copying, as all the other competitives did, the ILEC tariffs. And so it complies with the step-down rules by benchmarking to the incumbent. I'm not getting your argument because I thought the arguments of Verizon was that you didn't, that Wye Voice did not step down. It was still charging the rate that was approved when Verizon was charging the zero rate at that point. So I don't understand the argument that you're mirroring Verizon's rate. If they're charging less than you're charging. We disagree with Verizon on that issue. So Verizon and the commission found that Wye Voice did not properly step down its rates. And we have in our papers side-by-side comparisons of the tariff and demonstrate that Wye Voice does in fact step down its rates. Under what circumstances does Wye Voice step down its rates? Wye Voice stepped down its rates when it, as the tandem, transmits a call to a price cap carrier and office. Just as incumbents are required to do and as interpreted under the level three order. But I'd like to focus the court back on firstly, that even if it was interpreted to be a violation of the step-down rule and the benchmarking, obligations of a competitive carrier. The commission cannot hold the tariff as void ab initio. It cannot retroactively invalidate Wye Voice's tariff because it was a properly filed, deemed lawful tariff. And the law is unambiguous on this point. I have a question on that. If we agree with that, where does that end? So if we were to agree with FCC now and say that Wye Voice's tariff was illegal, then lawfully, then Wye Voice can then have to charge a higher tariff? Yes, if you find, if you find for Wye Voice on the, you enforce 204A3, that it was a deemed lawful tariff with no retroactive rate making. But disagree that we properly benchmarked, then it would be, then it would be in effect as of the date of the order. Prospective rate making as the date of the order. But your honors, here on the benchmarking rule, competitive carriers need to charge the same rate as the ILEC for the same service. That is what Wye Voice did here. In terms of, in terms of money, what is the rate that is being charged by Verizon? I'm sorry. After application of the step down rule. What is, so when Verizon connects as a tandem switch to an in switch that is affiliated, what amount is being charged by Verizon? Zero. The rate would be zero. Okay. So if Wye Voice as a tandem switch operator switches a call to an, do you have any affiliated in offices? Well, it depends what the classification of that affiliation is. So Verizon, when it sends a call as a tandem to its affiliate price cap carrier. I'm not price capped. Let's leave price capped out of it. Because that's where I think the FCC has a difference with your interpretation. So if you, if you as a tandem switch operator transfer a call to an affiliated in office, what's your tariff in terms of money? What's your tariff? Okay. So if it's, if it's Verizon sending it to an affiliate. It's Wye Voice. Wye Voice. Wye Voice sends it to a Wye Voice affiliated in office. What's the tariff that's charged? Under the new, under this order that we are appealing, it has to be zero. However, when Verizon. But what did you have that the FCC said was not benchmarked? You had like a .07 or something like that. .007, something like that. Yes. So let me try to. So the FCC is saying if Verizon's tariff under that circumstance is zero. Wye Voice's tariff under that circumstance must be zero as well. Let me clarify one thing if I may. Answer my question first. That is what the FCC is saying. Correct. Yes. And let me clarify one thing. When Verizon sends a call to an affiliate end office. That's not a price cap carrier. It gets to charge full rate. I didn't understand your question before and I apologize for that. Okay. So under what circumstance would Verizon send. So Verizon would be sending a call to an end office that's a competitive. It gets to charge full rate. That's what you're saying. That's exactly what I'm saying. It gets to charge full rate for that call. And under this order that we're appealing, Wye Voice does not. Wye Voice has to charge zero. It flies in the face of the benchmarking. Thank you. I will, unless there's other questions. I have a question or two. 204A3. I personally believe your best argument is that absent objection or challenge within 15 days, it's game, set, and match. However, the agency makes an argument that I think we have to credit that firms like your clients can't simply come to the FCC and file any and all outrageous rates that they wish and then rely on those filings being made perhaps in the dead of night, perhaps at the end of the year, whenever, and then have the commission deem lawful terrorists that violate specific commission rules. They rely on AT&T Services versus Great Lakes ComNet, which was an agency decision in 2015. What, aside from the congressional, well, I should say the language of the statute, how do you rectify? Let's say you're wrong, and I'm not saying you are, but let's say you are wrong on the classification issue and the FCC needs to do something about it and they don't have an opportunity to necessarily do that in 15 days. What remedies do they have to protect the consuming public from gouging or outrageous behavior at the hands of telecommunications firms? They have other methods. They have Section 205 and 208. So, Your Honor, the issue of what you just raised, carriers coming in and filing tariffs with outrageous rates and then having the safe harbor of the 15 days, those were issues that were confronted by Congress in creating the statute, and moreover, they were addressed by the commission in implementing the order in the streamlined tariff order that came out, which implemented 204A3. So, in other words, counsel, even though a tariff is deemed lawful, it still can be the subject of a complaint, as it was here, that even though it was deemed lawful, it's actually not lawful, and so it doesn't stand for all time just because it was deemed lawful. It can be still challenged by a complainant, correct? Absolutely. It can still be challenged by a complainant on day 16. The commission on its own accord can initiate a proceeding on day 16 and declare that rate as unlawful. However, then it can only provide prospective relief, and so the commission is not without the ability to declare that rate unjust and unreasonable. It just conclusively bars retroactive liability if it follows the 15-day streamlined procedure, and the risks of that were those that were struggled with and reasoned by Congress. So your complaint then is that by acting in an ab initio fashion, the commission wiped out everything prior to the filing of the complaint. Correct. It retroactively deems wide-voiced tariffs unlawful from the date it was filed in 2017, which is in clear contravention of the streamlined tariff order 20483. So if you're right, excuse me, if the commission's right about the rates and you're wrong, then what do we do? If the commission is right about the rates and I'm wrong, which I strongly believe I am not. I don't know that. What do we do? Then as the day of the commission's order, November 2019, I believe the heat is escaping me, it could set those new rates going forward for the wide-voiced tariff. But it cannot declare that the charges between the day of that, day 16 of its filing, and it was deemed lawful, to the date of the order, it cannot retroactively reset those rates. So the practical effect is that damages, if any would be calculated from the date of the order as opposed to the date of the deem filed. Correct. All right, counsel, you've exceeded your time. We'll give you a minute for rebuttal, but we'll hear from Mr. Good morning, your honor. May it please the court. And I'm sharing five minutes of my time with counsel. Could you please put 15 minutes on the clock? Madam Clark. Thank you. Your honors, the rules in this case are technical, but the agency's decision is straightforward. The benchmark rule requires competitive carriers like wide voice to match incumbents rates for the same service. Now the different rule, the step-down rule requires incumbents to step down their rates for tandem switch transport service, which the step-down rule defines based on common ownership of the facilities that are called travels over. So the tandem office, the tandem switch and the end office. In this case, the FCC held that why voice must match the incumbents rate when it provides the same service defined by the rule, meaning that if the incumbent is required to step down where it owns both the tandem office, the, the tandem switch and the end office, then why voice is required to step down when why voice likewise owns the tandem switch and the end office. Now why voice argues that that's inconsistent with the FCC is level three decision, but that's wrong for two reasons. First of all, that level three decision didn't address the benchmark rule, which the commission applied here. Second of all, the level three decision held simply that a price cap carrier must step down its rate when it commonly owns the facilities that the service is defined by. So when a price cap carrier under level three cans off a call to any affiliated carrier, regardless of its regulatory classifications, then the step down rule doesn't apply. Yes. Opposing council said that if Verizon sends a call to an in office, that is a competitive local exchange carrier. It charges the tariff amount. Do you agree with that? Your honor. If Verizon hands off a call to a competitive carrier, then Verizon isn't subject to the step down rule and Verizon doesn't. So is it true that there are no competitive carriers that are affiliated with Verizon? The record doesn't reflect. I think the record reflects that Verizon is affiliated with some competitive carriers. Well, so if Verizon has a tandem switch operator, transferred a call to an in office, that is Verizon affiliate, what tariff would apply? It would, it would apply the normal, whatever the tariff rate is, not the step down rate. So why is that true? Because your honor, the commission has interpreted the step down rule to require the step down the zero rate now and previously 0.07 to apply only when the incumbent price cap carrier owns both of the facilities that the service is defined by. And your, your honors asked the question about, isn't this a case about how the service is defined? And that's exactly right. The service in this case is defined as ownership of the facilities that a call travels over. So if, if Verizon owns a competitive local exchange carrier and Verizon is the tandem switch operator, why wouldn't the step down apply? So your honor in level three, what the commission said was if it's a question of affiliation, then the step down rule doesn't apply. And the commission gave various reasons for that that are related to this bill and keep transition. That's the origin of the step down requirements, but the commission's rules define affiliation as 10% or more ownership. So the level three order and the step down rule apply in relatively narrow circumstances where it's common ownership. So if it's Verizon as a price cap carrier rise is only subject to that step down. When Verizon is handing off to its own end office, if Verizon is handing off to an affiliated end office, and it could be an office that's affiliated that is competitive or any other kind of a carrier, it's not subject to the step down. I don't get that distinction. I don't, I don't get the distinction that you're making because it seems that if a competitive, I mean, the argument is if a competitive local exchange carrier hands off to an affiliated competitive local exchange carrier, it has to be a step down. No, you're right. That's not, that's not right. Under the benchmark rule with the commission held in this order is that the same terms that price cap carriers are subject to it. So if, if, if wide voice as a competitive carrier hands off a call to an affiliated carrier, regardless of its classification, why voice isn't subject to the step down rule is not, is not, is not why voice is only subject to the step down rule where why voice owns both of the facilities that the rule defined service by it's exactly the same truth for Verizon. If it owns both. Yes. Verizon is subject to the step down. If Verizon owns both facilities. And so why voice is subject to the step down. If, if why voice owns both facilities. Now if Verizon hands off to a different carrier, even if it's an affiliated carrier, the rule doesn't apply. And the commission is defining affiliated. The commission's rules define affiliated as 10% or higher interest. So it could be any interest down to 10%. And the record doesn't reflect the various levels of ownership of the carriers that are being handed off to. So if it's 90% ownership, it's not considered subject to the step down rate. It has to be a hundred percent ownership. So your honor, the record doesn't, doesn't, the commission didn't engage in analysis of, of different levels of affiliation, but the level three order and the order that's before you are limited to a situation where it's common ownership. And I believe that that means a hundred percent ownership by the price cap carrier. And then by the bench rule by why voice the competitive carrier. So, so just to be clear, if wide voice hands it off to a end office that it owns, it's subject to the step down, correct? Yes. And then if wide voice hands it off to an affiliate and office, it's not subject to the step down. That's correct. And that the same rule applies to Verizon. That's correct. Your honor. So what, why, why, why, what did a pleasant council say that is the, is the disparity between Verizon and white voice? My understanding of Verizon's position as to why the rule and the, and the commission's order are unfair. I mean, wide voice is position, excuse me, wide voice position as to why the order is unfair is that when a price cap carrier under the step down rule hands off to a competitive carrier, the price cap carrier is not required to step down. That's a, that's a by virtue of affiliation, affiliation doesn't trigger the step down. So why voice's position is when we hand off or when we, we're a competitive carrier. So when we terminate a call to an end office, it's owned by a competitive carrier. We shouldn't have to step down either, but that's not the way the rule works. That's not how the service is defined in the commission's decision really turns on the rules definition of service based on this common ownership. Turning to the statutory question, this case presents an issue of first impression. And that is whether a rate that a carrier is prohibited from tariffing may be deemed lawful in adopting the benchmark rule. Can I ask whether it's ultimately lawful or not? I think there's no question. It can be, and here was deemed lawful. There's no out in the statutory language. If a local carrier filed a new or revised charge classification regulation or practice, and there's no challenge within 15 days, it's effective and deemed lawful. And unless we are willing to override the clear implication of the statute, Congress was very explicit. Any tariff shall be deemed lawful. If not challenged for the applicable period. And that's what happened here. And I think therefore these rates were deemed lawful. Now I try to get at it with Ms. Coppola as to what happens after that, but clearly the rates were filed. There was no challenge in the statute is triggered. Your honor. I understand your position and that reflects why voices interpretation of the statute. And that absolutely makes sense when you look at the deemed lawful provision in a vacuum, but the commission's interpretation that the statute is ambiguous is really a product of reading the statute in the context of the acts. Other tariff provisions, section 205, the provision that follows section 204 gives the FCC authority to prescribe in advance rates. And that's what the commission did here in adopting the benchmark rule. It said in effect, the benchmark rule is the conclusively presumed lawful rate and carriers competitive carriers are prohibited from filing any other rate. So in order to read section 204, a three of the deemed lawful provision as unambiguous and as granting deemed lawful status to any tariff that's filed according to streamline procedures, we have to infer the Congress repeal by implication section 205, to the extent of conflict to, to the extent that to conflict. But counsel, on the other hand, your interpretation of the two statutes would render the deemed lawful provision virtually void because the, the agency could always go back and retroactively negate the deemed lawful status. And so the deemed lawful status really is of no effect. I would, I would respectfully disagree your honor. And the reason for that is that the DC circuits faced a number of cases involving the deemed lawful provision. And both of those cases involved tariffs that were legal when filed, but later turned out due to subsequent developments to result in over earnings for the carriers that filed them. And the commission and interpreting statute pointed to the common law dichotomy between legal and lawful rates at common law rates could be lawful when legal, when filed, but then could turn out later to be unlawful based on the agency's decision. But under common law, when a, when a rate as here was prescribed in advance, there was, there was absolutely no distinction. So if a carrier, for instance, files a rate that doesn't violate any prescriptions but states a rate of return, that's based on the carrier's estimate, it's projection of what, what its earnings may be in the future. And then later it turns out to earn more than it anticipated because of projections, the deemed lawful provision would protect it from refund liability. And we think that that's a council. None of that is in the text of the statute. How are we supposed to read all of that into the word deemed lawful? Is that where you read that your honor? We certainly interpret the statute in the context of the other provisions, but the ACS case by the DC circuit said specifically that we take the terms of the deemed lawful statute freighted with their common law meanings. And I think that that includes. If we disagree with the DC circuit, do you lose? Your honor, I don't think it's necessary for you to follow the DC circuits rationale because again, the, the DC circuit is in the context of the, the deemed lawful provision here, which is one of first impression, which is what happens in a case of conflict essentially between the deemed lawful provision and section two Oh five, the commission's rate prescription for me. Do they necessarily conflict? We believe on the plane reading of those two statutes. Is there a conflict? Your honor, there there's no conflict. If the court adopts the commission's reading, which harmonizes the two by providing deemed lawful status to, to any tariff filing, it's filed under streamline procedures. And that is legal when filed, it doesn't violate on its face, any FCC rules. But there is a conflict. If the court adopts wide voices, interpretation under which carriers can file any term rate or condition, regardless of whether the FCC has prohibited it in advance, regardless of how clear it is that the FCC has prohibited it. The difficulty with that interpretation is that it relieves the agency from the responsibility of within the 15 day period, 30 now that if it's so blatantly illegal, it should be really easy for the agency to ferret that out and not allow it to become lawful. I understand your point. Certainly your honor, but the commission explained in the worry and reconsideration or that's cited in the, in the challenged order that it receives thousands of these tariff filings a year. Some of them, many of them are, are novel length that they're, they're lengthy and wide voices. Statutory interpretation essentially sets the FCC up as a goalie that has to say every single shot. So Congress did that. Congress did that through the wording of the statute. And so that's an issue. That's an issue to take up with Congress, but it doesn't negate the wording of the statute. I certainly understand your honors point, but we believe it's more reasonable and rational to infer that Congress didn't repeal by implication, Section 205 authority and that what Congress meant to do was to provide deemed lawful status for tariffs that are legal when filed. Didn't say that though. Can I ask one, one quick question. So are you saying that we are, we have to defer to FCC's interpretation under Chevron or is that what you're asking?  your honor, we believe that the statute is ambiguous and that the FCC and it's ambiguous in light of the other tariff provisions of the act and that the FCC is reading is, is reasonable. But in order for it to be ambiguous, doesn't the language of the statute have to be ambiguous? I mean, it's fairly clear what Congress set forth in the statute. We'd have to do some, we'd have to do some parsing in order to find it ambiguous. Wouldn't we? I think unfortunately the, the situation that this case presents requires further digging. One can't simply take the deemed lawful provision on its own terms without reference to other provisions of the statute. And I would refer you to the Permian basin case decision by the Supreme Court that cited in our brief that addressed parallel tariff provisions under the natural gas act, one of which gave carriers right to file rates subject to notice to the agency and five months suspension investigation. And another provision that gave the agency authority to prescribe rates in advance. And the Supreme court was faced with a similar argument that the provision allowing carrier file rates gave carriers an invincible right to file those rates. And the Supreme court said that it simply wasn't going to adopt that interpretation. Absent compelling evidence that that was what Congress specifically intended and simply didn't find that. And we don't believe it's present here. All right. Thank you. Counsel. This cannot, I apologize in advance. No problem. May it please the court. The FCC properly concluded that wide voices. Did you introduce yourself? Oh, I'm sorry. Your honor. It's great. On behalf of Verizon. Your honor. Wasn't too far off. Your honor here. The FCC properly concluded that wide voices, Tara violated the plain language of the benchmark role because unlike the incumbent carriers, why was did not step down its rates when terminating calls that passed through wide voices own tandem. Now, because the commission has prohibited wide voice from tariffing rates that are above this benchmark, why voices rates could not become deemed lawful. But even if this court concludes that a carrier can circumvent the FCC prohibition on filing under section two, a four, a three wide circumvention, if it's in accordance with the statute, your honor here, section two, a four, a three doesn't apply. And the court doesn't even need to reach this interpretation of section two, a four, a three because 20 years ago, the FCC engaged in mandatory, the tariffing and for bore from the enforcement of all of the acts, tariff requirements, which includes section two, a four, a three on rates that were above the benchmark rule. So this is the 2001 access charge reform order. And which the FCC performs statutory analysis. And it decided that it would forbear from the enforcement of the acts, tariff requirements, and that tariffing rates that were above the council. Is there any case that allows that type of forbearance of, of, of a right that adheres to the parties, not the FCC. I just don't see how the FCC can say I'm, I I'm taking away the rights of, of, of these telecom industries. Well, your honor, when the FCC engages in mandatory D tariffing, it's deciding that all tariffs are no longer permitted. So parties are no longer permitted to file tariffs for that particular class of service or for that particular rate. And so the FCC do that in denigration of a statute. Yes, your honor, this 1996 telecommunications act gave the FCC the authority to forbear from any of the acts requirements. And subject to performing a necessary statutory analysis. As judge noted, that's the FCC forbearing on its own behalf to not enforce, but it can, it take away a statutory right of a regulated entity in that way. In that way. Yes, your honor. It can tell the regulated. Okay. Says that the FCC through its forbearance authority can take away a statutory right. That's been afforded to a regulated entity. What case is that? I, I'm afraid I don't have a case like for your honor right now. I, I don't think, I don't, I don't think your, your argument is, is correct. I think you're reading a part of the law that applies to a circumstance different than this one, but the FCC, as my colleague, judge boom, take points out, can't simply forbear from actions that harms one private party against another. I just don't think there's any authority for that. Your honor. I don't think the FCC was forbearing from an action that's harming one party. The FCC decided to forbear from allowing competitive carriers. Correct. That were above. Correct. We agree. And section one 47 USC section one 60. D gives specific provisions that the FCC is not permitted to forbear from, but section two Oh four eight three is not one of those provisions. And then the streamline tariff order that white voice points to for the FCC was first interpreting section two Oh four eight three. You'll look at paragraph 35 through 37. There's no way that agency can forbear from allowing a behavior to go forward. That violates the plain language of a congressional action. It's just not, it's not I'm sorry. Go ahead. The FCC has forborn from allowing long distance carriers to tariff rates for long distance customers. They're no longer allowed to file a tariff rate. It's not that. Right. There's no congressional prohibition on them doing that. I'm sorry. There's no congressional prohibition here either. Your honor. What's two Oh four C three. If the rates aren't challenged, they're deemed lawful. The FCC can't forbear from that. I'm sorry. Go right ahead. I'm sorry. Two Oh four eight three. Your honor. Go ahead. The FCC did forbear from that authority. And the 2001 access charge reform order your honor. And I see that I'm out of time. So unless your honors have any further questions, Any questions. Thank you. Counsel rebuttal. Thank you. I'd like to refer the court back to a statement made earlier and clarify that the white voice order, the order on appeal here did in fact, Order that why boy stepped down its rates when it was sending a call to an affiliate. Now I believe counsel for the commission stated otherwise, and I'd like to point the court to paragraph 24 of the order, the order on appeal here, which plainly states when a benchmarking competitive lack that's by boys. Terminates traffic, traversing a tandem owned by it or an affiliate. If two must have down. Well, that's why I was asking the question because I was trying to get the distinction between the incumbent carriers and the competitive carriers. And I thought that, that he's, he made the distinction that they were the same. If it's owned by, as opposed to affiliated with. So now I'm confused. Okay. So then let me try to clarify because the order plainly states, as I just read for you, that why boys must step down its rates when it's sending a call to an affiliate. I just read that paragraph 24 of the order on appeal. However, the level three AT and T order from 2018. Is a direct contravention to that. It says explicitly that AT and T does not, does not step down. It's rates. When it is sending a call to a affiliate competitive care. That's what Mr. Sheriff said. If it's an affiliate, it doesn't have to step down. If it's wholly owned, it does have to step down. So he, he agreed with your proposition that if it's an affiliate, it doesn't, it isn't required to be stepped down. If it's totally owned, it is required to be stepped down. And that's wonderful. I'm glad he agrees with me now, but the commission didn't agree with me at the, at the two Oh eight hearing, because the commission found opposite to what he just said today. The commission. So if we were to strike the words or an affiliate in, in that paragraph 24, then, then you would have no argument, right? Then you, then you and Verizon would be on an equal footing. Correct. Your honor. Correct. Correct. And that is not what I correct. I'll leave it there. Very, very, very briefly, if I may, if there's no other questions on that point about the step down, this distinction. Well, first of all, the forbearance argument, I think the court understand. And moreover, it was never, it was never cited in the, as authority to issue the, the commission's opinion. And nor could it contravene the statute, the two Oh four eight three. As for the issue of legal versus lawful, I just want to quickly clear that up for the court. Legal tariff in a legal matter. And I'll point the court to ACS Anchorage case from the DC circuit, which clarifies that legal is a procedural issue, right? Whether it's filed, published. And that, that doctrine of what a legal tariff is. I did stop to the 1930s when it was, we didn't have the modern conveniences of filing in publishing a tariff. Illegal tariff is one that follows the procedural requirement. Then the next step is whether it's becomes awful. Here we have a legal tariff that was filed in accordance with the procedural requirements. Then day 16, it is that's deemed lawful. So this legal versus lawful is, is putting legal lipstick on a lawful pig. It just doesn't work. It's inflating the two theories. Yeah. Yes, you would agree. If the end office was owned by white boys, that you would have to step down. Your honor. I, I believe that is, if that is, that is consistent with the benchmarking approach. Okay. But not, not when it is, when it is affiliate. Got it. Do you know the origin of the, of the FCC's origin of the, the not affiliate part, not counting under the benchmark rule, where can we look that up? See what, what precisely they said? Yeah, absolutely. Your honor. It is in the level three decision. And that is, that is 18 dash 12. Yeah. I'm familiar with that. I didn't realize that's where it came from. Okay. Yes. And I would point the court to. I would point the court to. I would point the court to. Paragraphs 14 of that order. As well as 17 of that order judge. Which discusses the reason why. The commission was making a differentiation for affiliation. Instead of applying the rule. In a situation where the traffic is terminated. To the carrier C like, or wireless affiliate. Would result in desperate treatment. Of tandem services. Depending on affiliation with the tandem owner. Rather than the regulatory classification of the terminating. Provider. All right. Thank you counsel. Thank you. Thank you to all counsel for your helpful arguments in this case. The case is argued. Is submitted for decision by the court. That completes our calendar for the day. All of the cases for tomorrow's or argument have been submitted on the breeze. That completes our work for the week. Or arguments for the week. And we are adjourned.
judges: Rawlinson, Murphy, Bumatay